Case number 24-3014 Michael Johnson et al. v. Parker Hannifin Corporation et al. Arguments not to exceed 15 minutes per side. Mr. Sawyers, you may proceed for the appellant. May it please the court, Sean Sawyers on behalf of the plaintiffs would like to three minutes of rebuttal time. Fine. ERISA's fiduciary duties are the highest known to the law. In this case, the fiduciaries of the Parker Retirement Savings Plan allegedly failed to meet those high standards with respect to the plan's target date funds and share classes of the plan's investments. The district court found that the allegations failed to state a claim under the court's decisions in Common Spirit and Foreman. On the Nova review, the court should reverse the dismissal of both claims. Regarding the share class issue, the allegations here are very different from Common Spirit. The plaintiffs there relied entirely on hindsight allegations of utter performance. They allege that a breach should be inferred merely because the actively managed Fidelity Freedom funds, which were the second most popular target date fund in the entire industry, had underperformed the passively managed index version of the same funds, but they cited only the five-year period immediately preceding the complaint. There were no facts suggesting that the fiduciaries could have or should have foreseen the underperformance. Do you think that we should adopt a legal rule that requires you to plead some type of benchmark fund that you have to compare the fund they chose to, or do you think that that can be displaced in some circumstances? I think it is displaced in some circumstances, your honor. I think it applies when the plaintiff is relying solely on allegations of utter performance to suggest that there was a fiduciary. But that wasn't even true in, I'm blanking on the name, was it Smith? It wasn't true in Smith because there was red flag allegations, too. But then we required a benchmark there, it seems. Well, the thrust of the complaint was certainly that the actively managed fund was assured to underperform because it was more expensive. So they threw in some red flag. The discretion that was granted to the fund manager was never used. So really the case was about utter performance. Why don't you think, I mean, how do you determine whether something's imprudent without comparing it to something else they should have done? Well, that's the kind of, if you had done this, the claim would have done much better, but you have to pick a meaningful comparator. A claim for a breach of the duty of prudence is not about comparing the substantive aspects of an investment. It's about the process. The requirement is to use care, skill, prudence, and diligence of the type that a prudent person would use under the circumstances. And that's been described as a process-based inquiry. So a fiduciary would breach that duty if they did no investigation and just picked a name off a list. So the breach, when there's allegations that the process was flawed or from which can be inferred the process was flawed, there's not an additional requirement to also allege underperformance. If these cases get to summary judgment, are these usually like a battle of the experts? This is how a prudent manager would have done this. You wouldn't pick funds that have X, Y, and Z. Is that . . . if there's a plausible allegation that the process, as you're saying, was deviated from what a prudent fiduciary would do here, is that generally how these cases go? Is it kind of like a battle of the experts? It often is, Your Honor, that there are experts on both sides talking about the process that a prudent fiduciary would have followed and the types of investment lineups that would be selected for the plan under the circumstances. What about this process here? Does your complaint allege was flawed? Well, the process was flawed because this was an inexperienced manager that had never managed target date funds before and had only a four-year performance history. So the allegation about the process was that prudent fiduciaries at the time would not have considered a manager with that experience level and that's short of a track record of performance because this is a very important investment option, a target date fund. It's the default option in the fund. So you don't gamble on someone that doesn't have the experience and hasn't proven that there's an ability to generate better returns. Can I ask you how that, because there's a tricky statute of limitations question in this case, too, about what allegations we can consider. So I take it that that was about the initial selection of the Northern Trust focus funds, but I thought that that would only be timely if there are additional allegations of improper retention. Right. So why, as far as I can tell, and correct me if I'm wrong, you have two allegations about improper selection, which is the lack of data beforehand and then the high turnover. But I don't see anything other than performance as the basis for an imprudent decision to retain. I think that's right, Your Honor. The initial selection occurred in 2013 and what Hughes says, the Supreme Court case, is that retaining an imprudent fund within the limitations period is a separate breach. Yeah, so why wouldn't we at least require an objective benchmark for your retention claim? Because I think that that claim is just about that it underperformed as compared to these other funds. Well, it's that Northern Trust, at the time it was selected, it had never established that it had the competence to manage this type of fund. Can you sneak in, that's kind of, can you sneak in the allegations that may or may not be untimely into the retention claim and have us consider them there? It's kind of getting around. I wouldn't characterize it as sneaking. Well, I didn't mean to use pejorative language. The fact that a manager who hasn't demonstrated an ability to outperform, nothing within this limitations period, which began in 2015, had changed at that point. So at that point, once the limitation period begins, there's a duty to remove the imprudent investment within a reasonable time. So if the investment had improved dramatically starting in 2015, your case would not be timely? I think that's right. If there was a reason basis to say that this manager who didn't have the track record previously has now shown that it has the ability to generate what we expect to be favorable long-term performance, that it's no longer an imprudent investment and there was a decision made to that effect, then this election would be untimely. But here, there's nothing in the record suggesting that the infirmities had been cured during the limitations period. What do you make of the claim that, I know there's a lot of reliance on outside the record evidence, but that the objective strategy was different for the focus funds, that it was a more conservative approach, especially since they had the kind of employee ownership stock. So you wanted to have less risk in the other options. That strikes me as perfectly plausible. So isn't that a reason why you should have to show that the comparators you point to are equally conservative? So they're alleging outside this complaint evidence that it wasn't more conservative because it had more bonds, but maybe the burden should be on you to show that they had the same type of risk strategies, that they were equally conservative and still had better returns. Well, they show that there was a higher allocation of bonds in the focus funds, but that doesn't necessarily tell you that it's a uniquely conservative fund because, as Common Spirit discusses, equities can have different strategies. Some can be highly defensive, some can be aggressive. So the focus funds, just because they had a larger proportion of bonds, that doesn't tell us that the bonds weren't somehow more aggressive than the bonds in the other funds. And so the ultimate mix of investments isn't necessarily more conservative. Isn't this getting to the point that there's uncertainty about whether the kind of the risk strategies of the different funds are the same or not? I mean, there's just nothing in the... the performances are different, for sure. That's in a complaint. But there's nothing in the complaint that suggests they had comparable risk strategies. And why shouldn't that be a burden on you to plead? Well, I agree. If we were... if our theory was that the focus funds are imprudent because they underperformed these comparator funds, then there should be some showing of similarity. Although that also gets problematic because not every investment is going to have a perfectly comparable benchmark. Something could be, say, have a large... be undiversified and be something that just doesn't have a benchmark because no prudent fiduciary would invest that way. And so the lack of a prudent... a meaningful benchmark as the... would effectively prevent the planner from... from setting a claim. But the... the allegation here is that the underperformance relative to the... the TIA fund, the Vanguard fund, the TRO price fund, is merely to show that the plan lost money as a result of the imprudent selection of the inexperienced manager to begin with. It's not... we're not alleging that because they underperform those funds. That should raise an inference that there was a flawed process. It's just to show that the damages which common spirit acknowledges is something that the plaintiff would typically... Why don't you think you need to plausibly plead something similarity even to show damages? Because I would think... I would think their response would be, well, it doesn't... why would those be the appropriate alternatives? The top performers, as your own complaint says, if they were incredibly risky. Well, there are plausible alternatives at the pleading stage, and that ultimately would come down to a battle of the experts as well. What is the most plausible alternative that would have been selected under the circumstances? Vanguard is one of the larger players in the industry. It's a plausible alternative. They may say that there's a better one, but that... once there's a breach, that typically is the fiduciary's burden to show. Thank you. May it please the court. Michael Keneally, I represent the defendants in this matter. In common spirit and foreman, this court set out the standards for pleading a claim of imprudent management of an ERISA retirement plan. ERISA, like the common law of trusts, requires a prudent fiduciary decision-making process, but it doesn't grade a fiduciary's decisions from the vantage point of hindsight. As Judge Brennan held below, plaintiff's allegations don't raise a plausible claim of an imprudent decision-making process under common spirit and foreman. And that's not totally surprising, because plaintiffs set out on this lawsuit well before those decisions, and before it became clear, under controlling precedent, that this lawsuit's core allegation can't succeed. Do you think that those two cases require that there be a benchmark? Yes. When the plaintiff is alleging the sort of imprudence claim that they are alleging in their first count here about the imprudence of a particular investment option, and they are basing that on the performance of that option. Well, if your opponent has argued that there are reasons why the fund was an imprudent fund to invest in, one being the lack of a track record and the other being the quick transition, the 90% transition, why wouldn't that be enough without the common benchmark? Well, I think that it's actually very, two responses to that, Your Honor. I think it's very important, the discussion that happened just a few moments ago, because the decision initially to select those funds is outside the repose period here. It happened more than six years before the filing of the complaint. And so what plaintiffs would need to show is that something about those two facts shows that the decision-making process within the limitations period is flawed. To retain them. Correct. And I think that I heard my friend on the other side say that if you are deciding whether to retain a set of funds, one relevant factor would be how those funds are doing and are expected to do relative to their objectives going forward. So I don't think that it's plausible to say that any reasonable fiduciary would look at the plan lineup and say, irrespective of how they're performing or how we think they're going to perform, this fact about what happened before we selected them requires us to remove them from the plan lineup now. Of course, you would look at how they've been performing to make that decision. If the statute . . . just so I understand your view of common spirit in our jurisprudence, if we took out the statute of limitations issue, just hypothetically, and there was a claim brought just raising the two issues that Judge Moore articulated about imprudence in selection of this plan, you would agree that there doesn't need to be a benchmark, that the process alone could be enough of an allegation without also a kind of performance benchmark? Well, and this is going to be the second point I was going to raise, Your Honor, so thank you for that question. My view is that there could be red flags that are serious enough that you don't need, then, a benchmark. So imagine that it turned out the management team for a particular fund was a known Ponzi scheme. That would be a real red flag that you don't really need to look at. Like, oh, apparently these particular investors ended up getting paid pretty well from the Ponzi scheme, so the performance was good enough, you know, you don't have a claim. But the standard of plausibility would be, like, these . . . picking this fund that made these particular process decisions based on turnover, based on experience, maybe based on diversification, based on whatever, that no reasonable fiduciary would make this decision. If they could plausibly allege that, that would be enough. Does it have to be super extreme, like it was a Ponzi scheme, or is it enough to allege that, make a plausible allegation that a reasonable fiduciary wouldn't do this? I think you've got the standard right, Your Honor, but the two allegations we have here aren't even enough to meet that standard. Why don't we have to take as a fact that they say it was imprudent, you know, they basically have a statement that it was imprudent to pick this fund because of the lack of a track record. Don't we have to take that as a fact, or no? No, because for one thing it contradicts some of their other allegations. So one of the three funds that they use as a comparator for the focus funds, the TIA-CREF Life Cycle Index funds, was launched at, within a month of the focus funds, and they are holding that example up as a prudent decision, even though it has the same, it's vulnerable to the same lack of five year track record objection. So that's one issue. And then the other issue is that these red flags allegations are very much like the ones that the court confronted in common spirit. In common spirit, the plaintiff said, even before you selected the Fidelity Freedom funds, the fund had just undergone a significant strategy change and was now going to allow the managers to deviate from the glide path, prospectively, and that should have tipped you off that the funds were no longer a reliable, or were not a reliable investment to include in the first place. And this court looked at that and said, no, turnover, well it didn't say turnover, but deviating from the glide path is a natural feature of investing in this context, and the same thing is true about turnover. Even plaintiffs admit that having a certain amount of turnover is normal, and here the only allegation about the turnover is that it happened one time, to a large extent. What about the extreme nature of the turnover? Right, so. I don't exactly, 90% suggest that it was completely turnover, almost. Well, it's a complicated, it's a complicated thing. They alleged that five of the ten underlying index funds were changed, and so that led to a lot of turnover, and that may have generated, the complaint alleges, transaction costs at that point in time. But those don't then continue. This is very much unlike the Tibble scenario, where the Supreme Court was confronting allegations that there's some problem in the fund, in that case it was share class selection, that continued throughout the repose period. It wasn't just a problem that would have affected the selection at the beginning, but it carried over, and so you can't then say that the challenge based on that fact is now untimely. Here, the two things that they point to were over and done with by the time the repose period began here, and by the time of the repose period, there were actually five years of actual performance history for the focus funds, and so surely a prudent fiduciary would look at those actual facts about performance, rather than a sort of process violation that was at that point almost moot. I think that this case is very similar to the miners versus Wells Fargo case that the court discussed in some degree in common spirit, and the reason I say that is there, too, the plaintiffs were challenging a target date fund. It was actually offered by the plan sponsor there, Wells Fargo, that had a much higher concentration in bonds than the comparator fund, which is a Vanguard fund, and the Eighth Circuit, affirming the district court, said that that is a significantly different strategy, investment strategy, and so holding up a certain set of years in which that strategy yielded lesser returns than the equity-heavy strategy of the comparator fund doesn't really tell you anything surprising, much less that the process of the fiduciary was out of whack, because it just shows that the market was rewarding equity. Can I ask you, why is it just a process claim? Can the strategy ever just be substantively wrong? Suppose I'm a 20-year-old and I'm investing, and the only option I have is bonds and no securities. Could you say, even if you had all sorts of meetings where you discussed this, that just was a substantively wrong or substantively imprudent decision? I don't understand why it's just all about process. Yes, so ERISA does have a whole range of substantive requirements, and Mr. Sawyer's brought up the possibility of selecting for the plan an undiversified investment option. Well, that would be, unless we were talking about employer stock, that would be unlawful, because ERISA requires fiduciaries, as a substantive matter, to offer diversified investment choices. So there are some substantive requirements, but we're dealing here with a claim under 29 U.S.C. 1132 A2 and A3. Where do you read only process? I don't see the word process is why I'm confused. So you just, with the care, skill, prudence, and diligence under the circumstances then prevailing. Those are the features, the care, skill, prudence, and diligence, and I'm getting that not only from those words, but from the case law that interprets them in light of the common law of that suggests that it's only about making sure you make an informed decision. Well, that's the core ingredient of it. If you had a bad process and then the outcome still turned out well, in some circumstances, you may not have any losses, and so you might not have a claim in there, too. But the core thing that the fiduciaries judged on is the process, and the common spirit decision kind of starts the discussion by talking about this process-based analysis. So I'm not just making it up here today. It's firmly embedded, I think, in the case law. Can I turn quickly to the second claim? Yes, please. I was just gonna do that myself. Why isn't it just kind of a dispute of fact about whether you aggressively negotiated enough for the shorter, less expensive fee structure, even if we take your outside the complaint allegations about the fee caps? Why isn't it enough? Well, you're one of the biggest plans in the country. You should have wielded market power to at least approach them to ask if you could have had an exception to the minimums. And I think the problem here with that allegation, Your Honor, is that it is really only a boilerplate allegation that could appear in any complaint. The theory would always be the fund manager doesn't want to lose your business, and so would be willing to make concessions in its fees in order to keep you as a customer, and there's nothing magical about the fact that there's four billion dollars of assets in the plan. You could make the same argument about the five hundred million dollar plan at Foreman, or a much smaller plan, because we're always going to be dealing with smaller investment minimums. So here we're dealing with institutional plus shares that require about 100 million dollar investment. In Foreman, there was discussion about retail versus institutional. That was about a hundred thousand dollar minimum investment, so orders of magnitude different. But the principle that plaintiffs are alleging here would be the same, that if you had some bargaining power, given the investments you already had, and so if you had just asked for a better deal, you would get one. And if that works, then it really is. This kind of institutional share class allegation really would be the universal golden ticket that this court said was not supposed to be the implications of its decision. But wouldn't it be an easy victory at summary judgment for you? So that you just say, well, we did negotiate, and they refused. Well, I hope so, Your Honor, but as some of the questioning with Judge Blumkatz elicited earlier, these cases at summary judgment end up being a lot of battle of the experts, where each side has their own experts about what would have been feasible. And I think that here it's reasonable to not let the plaintiffs get that far at this stage without doing more than they've done in the complaint. So here are a couple of things they could have done in the complaint to make this claim cross the threshold from conceivable to plausible. They could have said, here are some other examples in which Vanguard gave a fund, access to institutional plus shares, with less than a hundred million dollars in commitment to this fund. There are a lot of disclosures that ERISA requires about not just our plan, but about plans across the country, and there's a publicly accessible Department of Labor database where you can search through a lot of these forms. So if this were as common of a thing as the suggestion in the complaint is, would be one to believe, there should be some examples of that. And often you see examples of what other funds are doing in, say, for example, the record-keeping fees cases, where plaintiffs will say, here's another plan that was paying far less on a per-participant basis for record-keeping, so you could have gotten a better deal for your participants. If there were other plans that were getting Vanguard, which is one of the top and most prestigious offerers of these kinds of investment options, if they were able to get concessions from Vanguard, that the hundred million dollars threshold that are stated in all the materials isn't really the threshold, there could be examples of that. So is it enough to allege this is common practice in the industry, that large funds try to negotiate these things, and as a matter of process, our plan didn't even try? Would that not be enough? Because that second part of the allegations, that's the key one, that the plan didn't even try. And they don't have any access to what the plan was trying to do. They're trying to use the facts that are observable that they didn't succeed to infer that they didn't try. But that's no more plausible than the fact that they did try and they were told, no, we have minimums. How would they find out without having discovery? Well, I think looking to other plans, what other plans were able to do with Vanguard would be a good one. I think they could also flesh out these allegations by saying, here's why Vanguard would have been worried if you were to leave. Because you could have said, we're going to go, I don't want to name another rival of Vanguard, but if you were going to go to Vanguard Sub-A and you were going to take your business there, they would have given you a better deal. You could have brought that to Vanguard's attention, and then they would have been more likely to cut you a deal. That would make the claim more plausible, too. But there's nothing other than an allegation that this is industry practice and a waiver would have been granted. And if that's not a conclusory allegation for this type of claim, I don't know what would be. I think if Foreman is right that this is not supposed to be a golden ticket to discovery, that just because you didn't offer the cheapest possible share class, you've raised an inference of imprudence, then I think this was testing the limit of that principle. Can I ask one last question, if you don't mind? So the Vanguard, in your brief, you had the minimums, but there's also an excessive fees claim with respect to the focus funds. And I think there's no, correct me if I'm wrong, I don't know what the minimum for the going from the 0.07 to the 0.02. So what do we do with that allegation that there isn't even a suggestion that there was a minimum that you weren't meeting? Well, on that one, Your Honor, I think the burden falls on the plaintiff to make some allegation that you would have been able to get the share. So in Foreman, the plaintiff there said, here's an example of something in an institutional share class that you were eligible for and you didn't get. Here there are no allegations, Your Honor is correct, about what would have been possible for the focus funds. But we focus on the Vanguard because there's reference to the Vanguard share class plan document that has the statement that they can do higher or lower thresholds for certain clients. And so that was something the plaintiffs put forward for Vanguard, but they don't even have something comparable to that for focus funds. It's really left, we're only left with speculation about what would have been possible. Thank you. Regarding the last point about the focus funds, the complaint does allege that the lower J class shares were available to the plan. And this is a plan that had up to a billion dollars invested in the focus funds and is in the largest three hundredths of one percent of all plans in the country. If this plan could not have qualified for the J class shares, then it's hard to imagine who possibly could have. So it's certainly plausible that the J class shares could have been obtained if they had prudently negotiated for it. And it's not a golden ticket because there's always going to be a context-specific inquiry. Not every plan that has a higher cost share is going to have 4.3 billion dollars in assets and be among the largest in the country. If it was a significantly smaller plan, it may not raise a plausible inference of a breach, merely because they were not in the lowest cost share class. On the point about the turnover ratio, the common spirit didn't suggest that anything approaching ninety percent would be considered mainstream. What the court said was a slight deviation from the normal glide path would be considered within the mainstream practice. The ninety percent that was involved here far exceeds anything that could be characterized as a slight deviation. As far as the comparator funds, the TIA defendants mentioned the TIA fund not having a lengthy track record either, but the Vanguard and T. Rowe Price, it's alleged that they had decades of performance history. As far as whether certain funds are substantively prudent or imprudent, the regulations that the Department of Labor has issued, and this is discussed in a case called Tatum from the Fourth Circuit that I believe we cited, they basically take the approach that investments are not generally per se prudent or imprudent. There's no prohibited list of investments. The requirement is that there's a sufficient investigation, and if the investigation is done, then that will usually point in a direction that there's a certain substantive result that should follow and that the fiduciary should follow the conclusion reached as a result of the investigation. Unless there are any other questions, that's all. Thank you. Thank you both for your argument and the case will be submitted and the clerk may adjourn court.